**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

TYRONE PASTURES,

                Plaintiff,

                                      Case No. 3:14-cv-718-J-JRK

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.
_____/

**OPINION AND ORDER**[1]

**I.  Status**

      Tyrone Pastures ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI").  Plaintiff's alleged inability to work is the result of a "[r]ight broken hip femur and back nerve damage [on the] right side of [his] body."  See Transcript of Administrative Proceedings (Doc. Nos. 12-13; collectively, "Tr." or "administrative transcript"), filed July 30, 2014, at 306.[2]  On August 25, 2009, Plaintiff filed applications for DIB and SSI, alleging onset dates of December 23, 2007, and March 18,

---

[1]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 11), filed July 30, 2014; Reference Order (Doc. No. 15), entered August 5, 2014.

[2]     The pagination is continuous between the Transcript of Administrative Proceedings (Doc. No. 12) and the supplemental transcript (Doc. No. 13).

2009, respectively.[3]  Tr. at 219-20 (DIB); Tr. at 236-39 (SSI).  Plaintiff's applications were denied initially, Tr. at 37, 73, 75-76 (DIB); Tr. at 38, 74, 78-79 (SSI), and were denied upon reconsideration, Tr. at 40, 92-94 (DIB); Tr. at 41, 95-97 (SSI).

On March 17, 2011, an Administrative Law Judge ("ALJ") held a hearing during which the ALJ heard testimony from a vocational expert ("VE") and Plaintiff, who was represented by non-attorney Jared Dickerson, a paralegal from the Morgan & Morgan law firm.[4]  Tr. at 515-55.  At the time of the hearing, Plaintiff was fifty (50) years old.  Tr. at 523.  On April 15, 2011, the ALJ issued a decision ("2011 Decision") finding Plaintiff not disabled.  Tr. at 45-54.  Plaintiff then requested review by the Appeals Council, Tr. at 175, and he submitted evidence to the Council in the form of a letter from Morgan & Morgan, the law firm representing him, Tr. at 176-77.  On May 31, 2012, the Appeals Council vacated the ALJ's 2011 Decision and remanded the case to the ALJ for resolution of an apparent inconsistency between the ALJ's residual functional capacity ("RFC") finding and a non-examining consultant's medical opinion given significant weight by the ALJ.  Tr. at 61.  As the Appeals Council noted, the ALJ had found Plaintiff has the RFC "to sit, stand, and walk for a total of six hours each out of an eight-hour workday," while the consultant had opined that Plaintiff "could stand and/or walk for a maximum of three hours in an eight-hour work day."  Tr. at 61 (emphasis added and citation omitted).  In addition to directing the ALJ to reconsider

---

[3]    A Disability Report form completed by Plaintiff indicates that his injuries began interfering with his ability to work on December 23, 2007, and that he stopped working on March 18, 2009.  Tr. at 306.

[4]    The hearing transcript does not indicate that Mr. Dickerson is a non-attorney.  See Tr. at 515-55.  The administrative transcript, however, includes letters written on Morgan & Morgan stationery and signed by Mr. Dickerson as Plaintiff's "Non-Attorney Representative."  Tr. at 215, 369.

Plaintiff's RFC, among other instructions, the Appeals Council directed the ALJ on remand to "[o]btain additional evidence concerning [Plaintiff's] physical impairments in order to complete the administrative record." Tr. at 61-62.

On February 4, 2013, the ALJ held a second hearing during which the ALJ again heard testimony from a VE and Plaintiff, who was represented by non-attorney Rick Gach, a different paralegal from the same law firm as Plaintiff's previous hearing representative. Tr. at 483-514; see Tr. at 214 (representation agreement). On April 3, 2013, the ALJ issued a decision ("Decision" or "2013 Decision"). Tr. at 18-25. In the Decision, the ALJ "adopt[ed] and incorporate[d]" the medical evidence summary from the vacated 2011 Decision because the ALJ found it was "a correct summary of the evidence that was available at that time, and . . . neither the Appeals Council nor [Plaintiff] ha[d] identified any errors" in it. Tr. at 22. The ALJ noted that the only "additional medical evidence . . . submitted into the record" since the 2011 Decision "consist[ed] of x-rays dated in December 2010." Tr. at 22. The ALJ corrected the inconsistency addressed by the Appeals Council by adjusting Plaintiff's RFC to require that Plaintiff "not stand or walk for more than 3 hours in an 8-hour workday," Tr. at 21 (emphasis added), and the ALJ found Plaintiff "has not been under a disability . . . from December 23, 2007, through the date of this [D]ecision," Tr. at 24.

Plaintiff then retained an attorney from a different law firm and requested review by the Appeals Council, submitting along with the request a brief letter from his attorney representative but no additional medical evidence. Tr. at 12-14. On May 6, 2014, the Appeals Council denied Plaintiff's request for review, making the ALJ's Decision the final decision of the Commissioner. Tr. at 1-3. On June 20, 2014, Plaintiff commenced this

action under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises three issues on appeal: (1) whether the ALJ "err[ed] when she failed to obtain updated and current medical evidence that was necessary in order to ensure an adequate adjudication of [Plaintiff's] claim for disability benefits"; (2) whether the ALJ "err[ed] when she failed to obtain an updated consultative examination"; and (3) whether the ALJ "adequately and accurately consider[ed] [Plaintiff's] testimony and assess[ed] his credibility." Memorandum in Support of Plaintiff's Appeal of the Commissioner's Decision (Doc. No. 19; "Pl.'s Mem."), filed October 29, 2014, at 1, 6-23 (emphasis omitted). In response, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 20; "Def.'s Mem.") on December 23, 2014.

After a thorough review of the entire record and the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for the ALJ to obtain updated medical evidence and also to reconsider the credibility finding and clarify how evidence developed since the 2011 Decision affects the finding.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining

---

[5]       "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry.  See Tr. at 20-24.  At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since December 23, 2007, the alleged onset date."  Tr. at 20 (emphasis and citation omitted).  At step two, the ALJ found that Plaintiff "has the following severe impairments: right hip osteoarthritis status post hip replacement, right knee disorder, right ankle disorder, lumbar spine disorder, and hypertension."  Tr. at 20 (emphasis and citation omitted).  At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. at 20-21 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following RFC:

[Plaintiff can] perform a full range of light work . . . with limitations. [Plaintiff] must not stand or walk for more than 3 hours in an 8-hour workday, the remainder being sitting.  [Plaintiff] must be provided with a sit-stand option and an opportunity to change position as often as every 30 minutes within the maximum parameters stated above.  [Plaintiff] can perform postural motions no more than occasionally, and must never climb ladders, ropes, or scaffolds. [Plaintiff] must not reach overhead more than occasionally. [Plaintiff] must avoid dangerous work hazards such as unprotected heights and exposed machinery.  [Plaintiff] must avoid uneven surfaces when walking, and must be allowed to use a cane when walking.  Because of the potential for pain to

cause distraction, [Plaintiff] is limited to performing routine, uncomplicated tasks at a non-production rate pace.

Tr. at 21 (emphasis and citation omitted).  At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" as a "[p]lasterer."  Tr. at 23 (emphasis and citation omitted).  At step five, the ALJ considered Plaintiff's age (forty-seven (47) years old on the alleged disability onset date), education ("at least a high school education"), work experience, and RFC, and the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."  Tr. at 23 (emphasis and citation omitted). Relying on the testimony of the VE, the ALJ identified as representative jobs a "marker II," a "parking lot attendant," and a "blade balancer." Tr. at 24 (capitalization omitted).  The ALJ concluded that Plaintiff "has not been under a disability . . . from December 23, 2007, through the date of this [D]ecision." Tr. at 24 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'"  Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'"  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire

record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence."  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

The first two issues raised by Plaintiff concern whether the ALJ erred by not obtaining updated medical evidence and an updated consultative examination.  Pl.'s Mem. at 6-14. The undersigned first addresses these two issues together, followed by the third issue, which concerns the ALJ's credibility determination.

### A. The Absence of Updated Medical Evidence and Consultative Examination

Plaintiff argues that the ALJ "err[ed] when she failed to obtain updated and current medical evidence that was necessary in order to ensure an adequate adjudication of [Plaintiff's] claim for disability benefits," id. at 1, 6 (emphasis omitted); see id. at 6-12, and furthermore, that the ALJ failed in her duty to obtain a consultative examination when the record contained insufficient evidence upon which to render a decision, see id. at 12-14.[6]

---

[6]     To support his argument that the ALJ's failure to obtain updated medical evidence prejudiced Plaintiff, Plaintiff attaches to his Memorandum "records from Shands Jacksonville dated December 6, 2010 through September 27, 2012." Pl.'s Mem. at 10; see Doc. No. 19-1 (attached medical records).  Plaintiff asserts that "[t]hese records are not being submitted to support an argument for a remand pursuant to Sentence Six of 42 U.S.C. § 405(g)." Pl.'s Mem. at 10 (emphasis added).  Instead, Plaintiff explains that he submits these records only "to show that without this easily obtainable evidence the ALJ's [D]ecision contains the necessary evidentiary gaps to support a finding by this Court that her
(continued...)

Defendant contends that the ALJ had sufficient evidence "to make an informed decision" and thus did not require additional medical records or a consultative examination. Def.'s Mem. at 3-4.   At issue, then, is whether the medical evidence on record before the ALJ was insufficient, such that reversal is required.[7]

"It is well-established that the ALJ has a basic duty to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(d)). "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." Id. (citing 20 C.F.R. § 416.912(a), (c)).   While "[t]he [ALJ] has a duty to develop the record where appropriate," the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." Ingram, 496 F.3d at 1269 (citing Doughty, 245 F.3d at 1281).   "In determining whether it is necessary to remand a case for development of the record, th[e c]ourt considers 'whether the record reveals evidentiary gaps which result in unfairness or clear prejudice.'" Brown v. Shalala, 44 F.3d 931, 934-35 (11th Cir. 1995).   Prejudice exists when the record contains evidentiary

---

[6](...continued) failure to obtain the records was prejudicial." Id. at 10.   The undersigned notes, however, that "[s]entence six of section 405(g) provides the sole means for a district court to remand to the Commissioner to consider new evidence presented for the first time in the district court." Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1267 (11th Cir. 2007).   Because Plaintiff expressly does not ask the Court to reverse pursuant to sentence six, the Court declines to examine the attached medical records, which were not in the record before the Commissioner.   The undersigned, therefore, also need not address Defendant's argument that this additional medical evidence submitted by Plaintiff "does not diminish the substantial evidence supporting the ALJ's [D]ecision." Def.'s Mem. at 7.

[7]     Plaintiff also contends, within his argument on this issue, that the ALJ erred in giving significant weight to an opinion of non-examining physician Louise Wunsch, M.D., because Dr. Wunsch had not reviewed any records after February 2010.   Pl.'s Mem. at 13-14; see also Tr. at 22 (ALJ's Decision); Tr. at 425-32 (physical RFC assessment completed by Dr. Wunsch on February 8, 2010). For reasons addressed below, however, the undersigned finds that it need not address this argument.

gaps that may cause the ALJ to reach an unfair determination due to the lack of evidence. Id. at 935.

Here, the ALJ clearly recognized, throughout the proceedings leading up to the 2013 Decision, that pertinent medical evidence was missing from Plaintiff's case. At Plaintiff's initial hearing in March 2011, after Plaintiff's representative said they were "in the process of getting" records from Plaintiff's recent hip replacement consultation with Edmund Brinkis, M.D., Tr. at 518, the ALJ stated about these records, "I think it's going to be important. That's something missing in your record. I know I have different things, but I don't have a lot of records for you, to be completely honest . . . ." Tr. at 552. The following month, the ALJ stated in the 2011 Decision that because these records "ha[d] still not been provided," leaving no treatment records to support Dr. Brinkis's opinion that Plaintiff "could only do less than sedentary exertional work," this opinion "carr[ied] little weight." Tr. at 51.[8]      As noted above, in May 2012, the Appeals Council vacated the ALJ's 2011 Decision and remanded the case to the ALJ to resolve an apparent inconsistency between the RFC assigned to Plaintiff and a non-examining physician's medical opinion given substantial weight. Tr. at 61. The Appeals Council also directed the ALJ on remand as follows:

---

[8]       A letter from the law firm originally representing Plaintiff in his case, submitted to the Appeals Council with Plaintiff's request for review of the ALJ's 2011 Decision, indicates that on March 28, 2011, Plaintiff's representative requested that the ALJ give "additional time to pay for and obtain" certain medical records, but that the ALJ did not respond. Tr. at 176-77. The letter states that "[o]n April 11, 2011, additional medical records . . . were electronically filed with the Jacksonville [Office of Disability Adjudication and Review]." Tr. at 177. Although the letter does not clearly indicate the contents of these "additional medical records," the List of Exhibits attached to the ALJ's 2011 Decision includes a "Radiology Report," dated December 2010, that was submitted "[s]ubsequent to hearing." Tr. at 59. The ALJ did not mention this report in the 2011 Decision. See Tr. at 45-54. Two years later, however, on remand from the Appeals Council, the ALJ noted that these December 2010 radiology reports were submitted "[s]ince the prior [2011 D]ecision." Tr at 22.

> Obtain additional evidence concerning [Plaintiff's] physical impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-1513 and 416.912-913).  The additional evidence may include, if warranted and available, a consultative physical examination and medical source statements about what [Plaintiff] can still do despite the impairments.

Tr. at 61.

On remand, the ALJ again acknowledged missing medical evidence.  At the 2013 hearing, after Plaintiff notified the ALJ of his October 2012 hip replacement surgery, Tr. at 489,[9] the ALJ stated, "Now, I think we, obviously, need some updated records. . . .  So we'll get the surgery records, and the physical therapy records," Tr. at 497.  At the end of the hearing, the ALJ stated, "I would like to get all [Plaintiff's] updated Shands[10] records before I make a decision.  It looks like we have about a year and a half that are maybe absent."  Tr. at 513.  Plaintiff's representative responded, "I will get those to you, Your Honor."  Tr. at 513.  Addressing Plaintiff's representative, the ALJ then stated as follows: "So I'll give you 10 days.  I realize that's going to be a challenge, but just follow up at the end of the 10-day period, so I keep in touch with you, in terms of the progress."  Tr. at 513.

The evidentiary gaps that had been addressed at the hearings and the vacated 2011 Decision generally remained in the Decision that followed in April 2013.  The ALJ recognized that other than "x-rays dated in December 2010," no new medical evidence had been added to the record since the 2011 Decision.  Tr. at 22.  Specifically, the ALJ noted that other than Plaintiff's hearing testimony, the record contained no evidence of Plaintiff's hip replacement

---

[9]       Defendant points out that medical records attached to Plaintiff's Memorandum indicate that Plaintiff's hip replacement surgery actually occurred in October 2011.  See Def.'s Mem. at 7.

[10]       Shands is the hospital is where Plaintiff was receiving treatment for his hip.  Tr. at 492.

surgery. Tr. at 22. As indicated above, the ALJ "adopt[ed] and incorporate[d]" the medical evidence summary from the 2011 Decision because she found it was "a correct summary of the evidence that was available at that time, and . . . neither the Appeals Council nor [Plaintiff] ha[d] identified any error" in it. Tr. at 22. Recounting the 2011 Decision, the ALJ noted that "significant weight was not given to the opinion of [Dr. Brinkis] because his opinion was not supported by treatment records or other justification." Tr. at 22. Despite acknowledging the absence of important medical evidence related to Plaintiff's current condition, including his hip replacement surgery, the ALJ concluded in the 2013 Decision that Plaintiff "has not been under a disability . . . from December 23, 2007, <u>through the date of this [D]ecision</u>." Tr. at 24 (emphasis added).

Defendant points out Plaintiff's failure to submit additional medical evidence either to the ALJ or the Appeals Council,[11] but Defendant does not suggest that such failure is dispositive of the issue or that it relieves the ALJ of the responsibilities to develop a full and fair record and make an informed decision based on substantial evidence. <u>See</u> Def.'s Mem. at 5; <u>Brown</u>, 44 F.3d at 934 (stating that "[w]hether or not the applicant is represented, the ALJ still has a duty to develop a full and fair record); <u>Falge</u>, 150 F.3d at 1322 (indicating that

---

[11]     The undersigned also notes that although Plaintiff addresses "the inexplicable failure on the part of his non-attorney representative to obtain the medical evidence requested by the ALJ," <u>see</u> Pl.'s Mem. at 9, and elsewhere calls the non-attorney's representation "inadequate," <u>see id.</u> at 10-12, Plaintiff does not address why he failed to provide the evidence to the Appeals Council, despite that he had retained an attorney to represent him in his petition to the Appeals Council, <u>see id.</u> at 4 (noting that Plaintiff "retained the undersigned [attorney] who appealed the ALJ's [D]ecision" to the Appeals Council). A letter from Plaintiff's attorney representative to the Appeals Council, submitted on May 8, 2013 with Plaintiff's request for review of the ALJ's 2013 Decision, requests "additional time . . . to provide [the Appeals Council] with additional evidence and/or argument in support of this Request for Review." Tr. at 12. A response from the Administration, sent July 8, 2013, stated that Plaintiff had to submit any additional information within twenty-five (25) days to be considered by the Appeals Council. Tr. at 5. It appears, however, that no additional medical evidence was submitted. <u>See</u> Tr. at 1-3 (Appeals Council's denial of Plaintiff's request for review).

an ALJ's decision is reversible if not supported by substantial evidence); Steele v. Astrue, No. 3:11CV310/RV/CJK, 2012 WL 1970046, at *14 (N.D. Fla. May 14, 2012), report and recommendation adopted, No. 3:11CV310/RV/CJK, 2012 WL 1969785 (N.D. Fla. June 1, 2012) (unpublished) (stating that "the ALJ must have evidence sufficient to allow for an informed resolution of the case") (citing Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997)).

As noted, the ALJ recognized missing evidence at the 2013 hearing and in the Decision. The extent and importance of that missing information is readily apparent because it encompassed more than two years, during which Plaintiff underwent a serious medical procedure (hip replacement surgery) directly involving the alleged cause of his inability to work. Because the ALJ had inadequate evidence to make an informed decision, the ALJ needed either to obtain updated medical records or, if such records were unavailable, to order a consultative examination. 20 C.F.R. § 404.1512(e); Holladay v. Bowen, 848 F.2d 1206, 1209 (11th Cir. 1988) (stating that "[i]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision") (quoting Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984)). By obtaining neither updated medical records nor a consultative examination, the ALJ failed to develop a full and fair record. The undersigned also finds that the substantial evidentiary gap resulted in clear prejudice. See Brown, 44 F.3d at 934-35. This matter is due to be remanded for the ALJ to obtain and consider updated medical evidence, including, if appropriate, a consultative examination.

## B. The ALJ's Credibility Determination

Plaintiff argues that the ALJ failed to "adequately and accurately consider [Plaintiff's] testimony and assess his credibility."  Pl.'s Mem. at 1, 14 (emphasis omitted); see id. at 14-23.  Specifically, Plaintiff contends that "it was improper for the ALJ to simply cite to and rely upon her analysis of the credibility of Mr. Pastures' testimony offered at his first hearing to find that the testimony offered at his second hearing was not credible." Id. at 14.

To establish a disability based on testimony of pain or other subjective symptoms, a claimant must satisfy two parts of a three-part test showing: (1) evidence of any underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged subjective symptoms; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed subjective symptoms.  Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (stating that "the standard also applies to complaints of subjective symptoms other than pain")).  "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

"[C]redibility determinations are the province of the ALJ." Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005).  The ALJ "must articulate explicit and adequate reasons" for finding a claimant "not credible." Wilson, 284 F.3d at 1225.  "When evaluating a claimant's subjective symptoms, the ALJ must consider things such as (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v.

Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).  After considering the claimant's subjective complaints, "the ALJ may reject them as not credible, and that determination will be reviewed for substantial evidence."  Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citing Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984)).

Here, in the 2013 Decision at issue, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained below." Tr. at 22.  The reasons the ALJ gave for the credibility finding were "adopt[ed] and incorporate[d]" from the ALJ's vacated 2011 Decision.  Tr. at 22.  The ALJ summarized that earlier finding as follows:

> That [2011] [D]ecision found that [Plaintiff] lacked credibility because he continued working after his alleged onset date, was able to perform a variety of activities of daily living which were inconsistent with his allegation of disability, and made inconsistent statements regarding his use of a cane.

Tr. at 22; see also Tr. at 49 (credibility finding in the 2011 Decision).   Other than this summary of the 2011 credibility finding, the ALJ provided no additional reasons in support of the credibility finding in the 2013 Decision, see Tr. at 18-25, despite that two years had passed and Plaintiff had testified again before the ALJ, see Tr. at 487-508 (Plaintiff's February 2013 hearing testimony).  At the 2013 hearing, Plaintiff testified about his October

2012 hip replacement surgery, Tr. at 489-90,[12] and about his daily activities and physical condition since the surgery, Tr. at 488-89, 492-95, 496-508.

Because the ALJ's only stated reasons in support of the credibility finding were summarized from the 2011 Decision, it is unclear whether the ALJ considered any evidence since that Decision, including Plaintiff's recent hearing testimony, that may have affected Plaintiff's credibility. The undersigned finds, therefore, that remand is required for the ALJ to reconsider Plaintiff's credibility and clarify how evidence since the 2011 Decision, including Plaintiff's testimony, affects the credibility finding.

## V. Conclusion

Based on a thorough review of the administrative transcript, and upon consideration of the respective arguments of the parties, the Court finds that the ALJ's Decision is not supported by substantial evidence.

In accordance with the foregoing, it is hereby **ORDERED**:

1.     The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), and pursuant to § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(a)     Obtain and consider updated medical evidence, including, if appropriate, a consultative examination;

---

[12]     As noted above, Defendant points out that medical records attached to Plaintiff's Memorandum indicate that Plaintiff's hip replacement surgery actually occurred in October 2011. See Def.'s Mem. at 7.

(b)    Reconsider the credibility determination and clarify how evidence since the 2011 Decision, including Plaintiff's hearing testimony, affects the credibility finding; and

(c)    Take such other action as may be necessary to resolve these claims properly.

2.    The Clerk is directed to close the file.

3.    In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) or § 1383(d)(2) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on September 28, 2015.

_James R. Klindt_
JAMES R. KLINDT
United States Magistrate Judge

clr
Copies to:
Counsel of record

-16-